The next case on the calendar for today is Gibbs v. Barona, No. 18-2748. Good morning. May it please the Court, my name is James Talberg and I represent Chris Barona who is now a retired member, former member of the Bridgeport, Connecticut Police Department. This case is about split-second judgments that police officers must make in the blink of an eye, life and death decisions in circumstances that are tense, uncertain and rapidly evolving. It's a case about Graham v. Connor and Tennessee v. Garner and it is our contention, with all due respect, that the district court erred in its application of those two precedents from the Supreme Court. Sotomayor Don't you have to argue to us that there is no possibility, no way in which the officer has seen the gun on the ground and yet there is a picture, presumably a frame that Judge Meyer found that indicated that he was in a position to see that? And so it seems to me that what you're arguing are the facts of the case to us, which are in dispute. With all due respect, Your Honor You may be right and a jury may certainly come to that conclusion, the conclusion you're suggesting, but to say that there was no evidence that upon which the plaintiff could make a case seems to me a little difficult to swallow, given the care that Judge Meyer took to look at the actual evidence. With all due respect, Judge Walker, we respectfully disagree, because the entire incident as it pertained to Chris Barona occurred in approximately 8 seconds. Yes. And Why is that? Well, we have, as the district court properly held, clear as day probable cause for the first shot. Absolutely. Because, Detective That's not in dispute. Go ahead. Well, the only way you get to the conclusion that the district court reached Judge Meyer that the first shot was impermissible was to hit pause on the video and replay and break it down frame by frame, and that is not what Graham v. Conner mandates. Graham v. Conner mandates that we do not look at these life-and-death decisions in 2020 hindsight with the benefit of Monday morning review. But if you look at the picture, you see the gun on the sidewalk, and then if you look at it, there are also pictures of your client doing this admittedly very rushed sequence looking down at the gun. So couldn't a jury find that, you know, the officer, before he fired the second shot, saw the gun? Again, with all due respect, Judge Parker, the only way that you, sitting here today, are able to reach that conclusion is by hitting pause and replay and watching the video. I disagree. You just watch the three videos, and you see the rifle go flying, and then you see a second shot being taken. And I found it impossible to make my own judgment, if I were the fact finder, about whether your client saw the gun or didn't see the gun, and also heard the gun or didn't hear the gun. This is, you know, an important matter. A man died as a result of that second shot. No one's disputing the probable cause as to the first. But it seems to me that this, I don't understand why a jury couldn't find one way or the other, as Judge Walker and Judge Parker are pointing out. They don't have to hit pause to be uncertain about what your client saw or heard. Again, Judge Carney, with all due respect, you have indicated again that it's based upon a review of the video. But when you look at what happened in real time in those eight seconds, it is not in keeping with Graham v. Conner or Tennessee v. Garner to say that the lethal threat presented by Mr. Stooks, when he waved the rifle in Detective Barona's direction, after Detective Barona had just seen Mr. Stooks on a public street menacing Anthony Davis with a rifle. If that first shot is permissible and then a second later Detective Barona loses sight of Mr. Stooks as he rounds the corner, which it's undisputed that is what happened, then it can't be the case that the second shot in that dynamic event is impermissible. But you're listening to things, too. I mean, you look at the whole context. I would want a jury to make that determination with all of those considerations in mind. I think you — I don't understand how you can rule it out. You're basically saying it all happened very quickly, and so the second shot has to be given the leeway, I mean, your client has to be given leeway with regard to the second shot. Absolutely, Judge Carney. And that is our main dispute with the district courts. The question I'm trying to test is whether it's possible, it's possible that he could have seen the gun on the ground, and it's impossible to rule that out. I don't think you need to reach that, Judge Walker. Why? Under Tennessee v. Garner, if the suspect threatens the officer with a weapon or there is probable cause to believe that he has committed a crime involving the infliction or threatened infliction of serious physical harm, deadly force may be used to prevent escape. There's another point that I wanted to mention. What do we make of the fact that your client gave a statement after the shooting that he fired the second shot at the victim who thereafter dropped his weapon, stumbled, and continued to run west? In other words, that he was actually holding the weapon, not that he didn't see it on the ground, but that the victim was holding the weapon when he fired the second shot. Your Honor, this, Judge Walker, I believe crisply highlights the difficulty that in a dynamic event like this, people perceive things. That's a false statement. Well, the district court, with all due respect, I must disagree. The district court didn't rely on that. I'm not saying it was intentional. I'm just saying that he remembered it differently, and he remembered it contrary to the video, not consistent with the video. He did, Your Honor. And I would concede that perhaps that's a prior inconsistent statement. It wasn't relied on by the district court, and it can be explained in that. But it also could be evidence of consciousness of wrongdoing. I mean, if there was a trial. I respectfully. I'm not saying it would be. I personally happen to agree with a lot of your arguments as a practical matter were the case to go to a jury. You know, it was fast. Everything happened quickly. He was a perfectly, you know, he was trying to fulfill his duty as a public citizen, as a off-duty policeman. All sorts of positive things can be said about your client here. But that's not the issue. The issue is whether it's possible that he could have seen the gun on the ground. I'm not sure I'd phrase it that way, Your Honor. The law requires that we look at this from the perspective of a reasonable officer in that situation, and at the time that Detective Barona fired the second shot, he is entitled to that leeway that he reasonably feared, and any reasonable officer would have feared, that there was a threat continued by Mr. Stukes, either to himself or to the public. At summary judgment, isn't the issue whether no reasonable officer would have done that? The question we should ask is, can you say no reasonable officer situated as this officer would have used that action? So if any single officer anywhere would have fired the second shot, then Detective Barona is entitled to qualified immunity. That is what this Court held in Muschiette, which was – I'd like to just comment on that briefly. That was a case in which the district court in Connecticut found there was a question of fact and denied summary judgment based on qualified immunity. The question was whether a deaf child could have perceived a taser warning from an officer. The – this Court reversed, because in sum, it framed the question that – as follows, quote, we cannot say that no reasonable officer situated as Officer Gianfrida was would have used the taser under those circumstances. Thank you, Mr. Talbert. I'm trying to keep everyone on schedule today. Very well. Similarly, here. You have two minutes of rebuttal. Thank you. You'll be able to follow up if you like. Thank you, Judge Cardone. You bet. Ms. Welch-Rubin. May it please the Court, I'm Lori Welch-Rubin and I represent – Excuse me. Could you move the microphone down to your speaker? Sure. Is that better? May it please the Court, my name is Lori Welch-Rubin and I represent the plaintiff appellee, Melissa Gibbs. The – it's interesting that Attorney Talbert just talked about any single officer, and that's because at his deposition, Detective Verona testified under oath, agreeing with the district court's premise, that if he had known that Brian Stooks had – and I'm quoting – had dropped the gun and he was running down the street without the gun, he, Verona, would have stayed with the gun and wouldn't have shot him a second time. Now, that is directly contradicted by the written statement that he gives in this case where he talks about, I saw him, you know, he's running down the street, I shot him a second time, then he stumbled and then the rifle, you know, goes flying up. I mean, those are diametrically opposed things. And particularly this – Well, I think the district judge was going on the video here. But the statement was in the record, Your Honor, before him. What? The statement was, in fact, in the record before him. Yeah. And so – You're highlighting that the facts are very unclear on which to make a finding about probable cause of the second shot. Is that right? Well, so one of the things that we have a motion to dismiss that's pending on the interlocutory appeal because it's our position they're not accepting our version of the facts. And our version of the facts are that he knew that the gun had been dropped and then whether under those circumstances it was okay for him to shoot him. How can you – you want summary judgment in your favor, in effect, right? No, we weren't arguing that. We wanted – I think a jury needs to decide this. I think this is exactly the – no, this is exactly – I don't know what your motion was about. I'm – No, we have a motion to dismiss the appeal, the interlocutory appeal, Your Honor. You're saying it's an interlocutory appeal. If there's a disputed issue of material fact, the appeal on qualified immunity needs to be dismissed, right? Correct. Yeah. Okay. And I think that this is exactly the type of case. And it's where – and I think Judge Meyer did a remarkable job in his analysis in, you know, getting to – this is one of those situations where a jury is in a better position to make a determination about what factually happened. It may very well be that we lose. It may very well be that the defendant loses. But there's sufficient dispute about whether or not he knew that the gun was dropped at the time of the second shot. And in that context – and the other thing, by the way, is the corner is not 90 degrees. It's actually kind of slices off the triangle at the end, so we get a wider view. But you have – you know, again, we've got Detective Rona's own statement that I saw him drop a gun, which is – contradicts his claim here, where he says unequivocally, I didn't hear the gun drop, I didn't see the gun drop, I didn't know the gun had dropped. I mean, unless the Court has any other questions, I think that I would ask that you take a look at this case and see whether or not you're going to write on the merits. I think the reality is that this is a situation where a jury does need to decide because there's sufficient dispute. Thank you. Thank you. Mr. Talbert. Yes, Your Honors. There's just one point there I'd like to rebut, the contention that Detective Rona had familiarity with the fish market. He had been involved in another incident there where he took a .38-caliber pistol off of a subject who had engaged in a robbery spree. This is at A-509 of the record. Excuse me just one second, but are you disputing that your client said what your adversary said he reported? I think she's correctly indicated his testimony, but he also testified that he reasonably feared for his life at the time that he fired. And again, this goes to the we don't he didn't have an opportunity with the benefit of 20-20 hindsight after he'd seen the video to take back what had happened. It happened in eight seconds less than it took me to introduce myself today. And so I would just dispute the idea that he didn't fear that Mr. Stooks still posed a threat. No one has a no one really has a better understanding of exactly what happened than your client. So what are we to make of contradictory statements from him about this experience? That's human nature. I would suggest explain help me understand that. Yes, Judge Parker. I would suggest that's simple human nature, that when you don't have the benefit of seeing the video before you prepare a report or even before his testimony was he hadn't seen the video. I didn't represent him at the time. He testified. The reality doesn't come from the video. It comes from what he witnessed on the screen. And in a dynamic event like this, Your Honor, where two shots are fired within mere seconds, it all happens in such a chaotic fashion that. I understand that. But you're not saying that whenever two shots are fired within seconds, that the second one needs to be excused and it's always supported. I mean, here we have a dispute as to the essence of what was known and the reason the second shot was taken. No, I'm not, Your Honor. And very specifically, there's two. So why should qualified immunity apply at this stage of the proceedings? Because there was no clearly established law that put Detective Barona on notice that his second shot. How about shooting an unarmed person running away? No clearly established authority for that? Well, Tennessee v. Garner specifically contemplates the situation that if there is a dangerous fleeing felon and the officer reasonably. Unarmed? Yes, Your Honor. That is. So if a person is unarmed and running away, you can shoot him in the back? It's not that simple, Your Honor. I don't think so. It's not that simple. But if the officer. But that's the clear law, it seems to me. I don't understand your argument here that somehow he's protected by qualified immunity if the facts are as the plaintiff alleges. Well, I would refer you to Cowan v. Breen. The two authorities that the district court relied on for the proposition that qualified immunity didn't attach were Obert v. Varga and Cowan v. Breen. In Cowan v. Breen, Judge Carney, there were two shots, but the testimony was the officer only fired the second shot because he was trained to always fire twice. Okay. Very good. I see my time is. Thank you for having the arguments. May I just? I think we have your arguments. Thank you. Very well. Thank you. Thank you, Judge. Thank you. We'll reserve the floor.